## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Thomas Blackwell | : | |
| 5233 Sansom Street | : | |
| Philadelphia, PA 19139 | : | TRIAL BY JURY DEMAND |
| | : | |
| Plaintiff. | : | CIVIL ACTION NO. |
| | : | |
| v. | : | |
| | : | |
| City of Philadelphia | : | |
| 1515 Arch Street | : | |
| Philadelphia, PA 19102 | : | |
| | : | |
| PO Bonilla, Badge No. 1996 | : | |
| 1515 Arch Street | : | |
| Philadelphia, PA 19102 | : | |
| | : | |
| and | : | |
| | : | |
| John Doe Police Officer | : | |
| 1515 Arch Street | : | |
| Philadelphia, PA 19102 | : | |
| | : | |
| Defendants. | : | |

## CIVIL ACTION COMPLAINT

Plaintiff by and through his attorney Brian J. Zeiger, Esquire, hereby alleges the following:

## JURISDICTION & VENUE

1. Plaintiff alleges civil rights violations under 42 U.S.C. § 1983 and this Court has jurisdiction pursuant to 28 U.S.C. § 1343 and 28 U.S.C. § 1331.

2. Defendants reside in the Eastern District of Pennsylvania and venue is proper pursuant to 28 U.S.C. § 1391(b).

1

## PARTIES

3. At all times relevant hereto the Plaintiff Thomas Blackwell is an adult resident of Pennsylvania who lives at 5233 Sansom St, Philadelphia, PA 19139.

4. Defendant City of Philadelphia, doing business at 1515 Arch Street, Philadelphia, PA 19102 is a municipality, duly organized and existing under the laws of the Commonwealth of Pennsylvania.

5. Defendants Bonilla, badge number 1996, and John Doe, are believed to be adult citizens of Pennsylvania conducting business at 1515 Arch Street, Philadelphia, PA 19102. The Defendants are believed to be police officers and are being sued in their individual capacity, hereinafter referred to as the "individual defendants".

6. At all times material hereto, the defendant corrections officers acted under color of law and within the course and scope of his employment, pursuant to the customs, policies, practices, ordinances, regulations, and directives of the City of Philadelphia.

## FACTUAL BACKGROUND

7. On October 26, 2020, Plaintiff was a peaceful protestor at or about 52nd and Walnut Streets in the city and county of Philadelphia in regard to the unjustified killing of Walter Wallace by Philadelphia Police.

8. Plaintiff was actively attempting to ask protestors to protest in a peaceful manner and/or return to their homes.

9. Defendants Bonilla and Doe instructed Plaintiff to return home.

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 191029
215.546.0340

10. Plaintiff told Defendants Bonilla and Doe the police blocked his street, and he could not return home.

11. The Defendants became enraged and attacked Plaintiff causing him serious bodily injury, including but not limited to a concussion with continued memory loss and multiple herniations to his back.

12. Before the beating occurred, the incident was being videoed, however, Defendant Doe approached the phone and stopped the phone from recording.

13. Plaintiff is still suffering from injuries as of the date of the filing of this action.

14. In addition, Plaintiff was falsely issued a summary citation for the incident by Defendant Bonilla.

15. However, based upon information and belief, Defendant Bonilla never turned in the citation at police headquarters, so Plaintiff never received a court notice.

16. The individual Defendants were not adequately trained and/or supervised on how to handle peaceful, nonviolent protests in the City of Philadelphia by the Defendant City of Philadelphia.

17. More outrageously, based upon information and belief, supervisors for the City of Philadelphia were on the scene and participated in the beat down of Plaintiff.

18. The Defendant City of Philadelphia has been sued on a myriad of occasions for using excessive force when dealing with peaceful, nonviolent protestors, yet the Defendant City of Philadelphia still does not properly train and supervise police officers regarding the use of force at non-violent peaceful protests.

19. Further, the City of Philadelphia has a long and distinguished history of failing to train

Levin & Zeiger LLP
1500 JFK Blvd, Suite 620
Philadelphia, Pennsylvania 191029
215.546.0340

police officers that citizens are allowed to "talk back" and do not have to "follow commands" of the police while citizens are engaged in first amendment conduct in peaceful, nonviolent protests. Further, the City of Philadelphia has failed to train and supervise its police officers that first amendment conduct and peaceful nonviolent protests never amount to disorderly conduct charges as a catchall under Pennsylvania law.

20. Yet, the City of Philadelphia has done nothing to change the culture of the Philadelphia Police.

21. On May 30, 2020, during peaceful, non-violent protest, two legal observers, Torin Smith and Amanda Geraci were at or near the Arch Street Methodist Church at 55 North Broad Street, Philadelphia, PA. During that time, Smith and Geraci were wearing bright green t-shirt that said "Legal Observer." Police approached Smith and Geraci and struck them with asps and/or batons in the face and chest. Geraci lost consciousness and Smith fell to the ground. Geraci suffered from a concussion and Smith suffered from bruising and soreness throughout their chest area. *See Smith et al. v. Doe*, et al. 21-cv-5241-BMS.

22. On May 30, 2020, during peaceful, non-violent protest, Adam Al-Asad, was protesting at Broad and Race streets in the City and County of Philadelphia. While protesting, he was struck in the face with pepper spray by Philadelphia Police. Mr. Al-Asad fled to Dilworth Plaza, where he was struck by Philadelphia Police Officer Brian Belli with a metal pole. Belli and another police officer laughed at Mr. Al-Asad while he was laying on the ground in pain from their assault. *See Al-Asad v. Doe, et al.*, 21-cv-5242-NIQA.

23. On May 30, 2020, Sam Trilling, a photojournalist, was struck with a police baton while photographing peaceful, non-violent protests in center city Philadelphia, while photographing the

4

Levin & Zeiger LLP
1500 JFK Blvd, Suite 620
Philadelphia, Pennsylvania 191029
215.546.0340

protests. https://pressfreedomtracker.us/all-incidents/journalist-hit-police-baton-while-photographing-protests-philadelphia/

24. On May 31, 2020, in residential and commercial areas in West Philadelphia, Philadelphia, PA, Philadelphia police officers were dressed in full body armor and SWAT uniforms flanked by armored police vehicles engaged in crowd control against peaceable non-violent protestors, demonstrators, and observers. The policed used excessive force against the citizens of Philadelphia, including randomly firing tear gas canisters and flash bangs into crowds and at individuals and shooting projectiles at peaceable residents, demonstrators, and observers. The police officers fired tear gas canisters at the residents, demonstrators, and observers who were peacefully gathered in West Philadelphia on that date. Some of the residents who were sprayed were not protesting but simply at their homes. *See Bryant et al. v. City of Philadelphia, et al.*, 20-cv-4386-RAL; *McMurrough v. City of Philadelphia et al.*, 20-cv-4355-TJS.

25. On June 2, 2020 the day after the incident on the Vine Street Expressway, Philadelphia Police Commissioner Danielle Outlaw issued a memorandum to all Philadelphia Police Department Officers establishing that the decision to use force on the Vine Street Expressway on June 1, 2020, was deliberate and that this decision was authorized by the City of Philadelphia policymakers, including Philadelphia Police Commissioner Danielle Outlaw. The intentional decision to use force on peaceful protesters by the City of Philadelphia policymakers was implemented by hundreds of Philadelphia Police Supervisors and officers. The City of Philadelphia policymakers attempted to justify the use of force on peaceful protesters by embracing a fabricated narrative regarding what happened on that date.

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 191029
215.546.0340

26. On June 25, 2020, the New York Times published a video taken by protesters at the scene of the Vine Street Expressway protests, in Philadelphia, which established that the protests on the Vine Street Expressway were non-violent and peaceable and that the force used on protesters was excessive. Thereafter, the City of Philadelphia policymakers, including Commissioner Outlaw changed their public position.

27. Within several hours of the publication of the New York Times investigation Philadelphia Mayor Jim Kenney and Defendant Police Commissioner Danielle Outlaw conducted a news conference in which they both apologized for the excessive use of force against peaceful protestors. Mayor Kenney sent a message conceding that members of the Philadelphia Police Department used excessive force. The decision by the policymakers from the Defendant Ci of Philadelphia, including Commissioner Outlaw, to shut down the Vine Street Expressway filled with demonstrators was a blatantly unconstitutional attack on the protesters' First and Fourth Amendment rights to the United States Constitution. *See Hough, et al. v. City of Philadelphia et al.*, 20-cv-3508-AB.

28. On June 1, 2020, Staff Inspector Joseph Bologna of the Philadelphia Police Department used excessive force on a Temple student, Evan Gorski, by striking him in the head with an asp, a metal baton designed to cause injury. The strike resulted in a laceration on the back of Mr. Gorski's head that required surgical staples. Following the assault Staff Inspector Bologna and two other police officers fabricated criminal charges against Evan Gorski. *See Gorski v. City of Philadelphia, et al.* 22-cv-563-JHS.

29. Before June 1, 2020, it had been well documented that Staff Inspector Joseph Bologna had engaged in misconduct throughout his career, all of which demonstrates the failure to train,

supervise and discipline Philadelphia police officers within the City of Philadelphia. In August of 2009 it was reported that Staff Inspector Bologna's unit who at the time had been in charge of the unit had cut cords to surveillance cameras and/or stole money and merchandise.

30. In April of 2014, the Philadelphia Inquirer published an article regarding Bologna and the same four officers under his command. The Internal Affairs Division of the Philadelphia Police Department sustained allegations of misconduct against Bologna. Specifically, Staff Inspector Bologna failed to properly supervise an officer who was present when that officer searched a vehicle without a warrant. Based on information and belief, the City of Philadelphia has settled over 33 lawsuits for a total of over $1.7 million related to misconduct committed by Bologna and the officers he supervised. Despite his history, the City of Philadelphia failed to discipline Bologna. On the contrary, his misconduct has been sanctioned by the City of Philadelphia as Inspector Bologna received promotions throughout the Philadelphia Police Department, including the position of Staff Inspector he held as of June 1, 2020. *See Banks v. City of Philadelphia, et al.*, 4-cv-1052-JS; *Reyes v. Bologna et al.*, 5-cv-2775-TMG; *Gonzalez v. City of Philadelphia, et al.*, ; 9-cv-936-TON, *Marcolongo et al. v. Cujdik, et al.*, 9-3554-TON; *Collado-Gomez et al. v. City of Philadelphia, et al.*, 9-cv-3911-TON; *Lanzara v. Cujdik et al.*, 9-cv-04071-TON; *Duran v. City Of Philadelphia et al.*, 9-cv-04120-TON; *Vargas v. City Of Philadelphia et al.*, 9-cv-05627-TON; *Daly v. City Of Philadelphia et al.*, 9-cv-06216-TON; *Johnson v. City Of Philadelphia et al.*, 13-cv-06616-ER; *Delvila et al. v. Liciardello et al.*, 15-cv-02521-PD; *Brame v. Reynolds et al.*, 16-cv-01031-PD.

31. Based on his history of misconduct, the policymakers for the City of Philadelphia were well aware that Staff Inspector Bologna would act in an unconstitutional manner. This risk

increased once Staff Inspector Bologna was placed in a position to command a unit of officers deployed on bikes assigned to monitor protest activity.

*32*. On June 2, 2020 Bologna was in the area of 10th and Market Streets in Center City when he encountered protester Caley Cohen. Staff Inspector Bologna grabbed Ms. Cohen and threw her to the ground, causing her injury. Upon information and belief, these two incidents of excessive force were covered on video and widely disseminated on social media. The City of Philadelphia had full knowledge of Bologna's actions on June 1st and June 2nd, 2020, but the City of Philadelphia did not to investigate or discipline Staff Inspector Bologna. *See https://www.phillymag.com/news/2021/10/04/joe-bologna-lawsuit-philadelphia-police/*

33. After June 5, 2020, when the Philadelphia District Attorney's Office announced it was bringing criminal charges against Bologna for the assault on Mr. Gorski that the City of Philadelphia finally took action. Despite the criticism and uproar and calls for reform of police training, as well as supervising and disciplining officers, the City of Philadelphia and its policymakers, including Commissioner Daniel Outlaw, the Philadelphia Police department did not significantly alter their policies, practice and pattern and/or custom regarding the conduct of Philadelphia Police Supervisors and officers during protests. *See Commonwealth v. Bologna*, MC-51-CR-0011373-2020; 1967 EDA 2021.

34. On October 20-27, 2020, peaceful non-violent protests took place in West Philadelphia in response to the police-involved shooting of Walter Wallace. Similar to the orders issued by Police Commissioner Outlaw and other policymakers for the Philadelphia Police Department ordered on May 31, 2020 and June 1, 2020, the SWAT team was again deployed to the area of West Philadelphia. Upon information and belief, **none** of the officers' names or badge numbers were displayed publicly for

easy identification by observers.

35. On October 20, 2020, Alfonse Bowman, during the same time period as the instant matter, driving through a peaceful, non-violent protest, was attacked and beaten by Philadelphia for no reason. Mr. Bowman suffered an acute fracture through the left inferior orbital rim and floor, lamina papyracea, anterior walls of the left maxillary antrum, and bilateral nasal bones. *See* 2:22-cv-02037-NIQA.

36. Further, on the same night, Rickia Young was driving home with her two-year-old son and 16-year-old nephew when she encountered a group of protesters just hours after police fatally shot Walter Wallace, Jr., a black man whose family had called for mental health assistance.

*37.* Philadelphia Police officers wearing SWAT gear with no names or badge numbers, with asps and batons, smashed Ms. Young's windows and pulled her and her nephew from the vehicle, and beat them, causing significant injuries. Ms. Young's two-year-old son was taken by police, and she was separated from her son for several hours. Outrageously, the Fraternal Order of Police shared a photo on Facebook of an officer holding her son with the caption claiming the child was wandering around by himself during protests. Based on information and belief, the City of Philadelphia settled the matter for $2,000,000. *See https://www.youtube.com/watch?v=evMlDq1Qnis; https://www.nbcnews.com/news/nbcblk/rickia-young-sues-police-union-facebook-post-toddler-son-rcna2057.*

38. Upon information and belief, even after the outrageous conduct of the Philadelphia Police from May 30, 2020 through June 2, 2020 incidents six months prior were not subject to

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 191029
215.546.0340

training, re-training, or discipline. Upon information and belief, no substantive policy changes were made or implemented following the protests in late May and early June of 2020 that changed the conduct of the Philadelphia police officers and supervisors.

39. The failure to implement changes and procedures were the direct cause of the injuries suffered by the Plaintiff in this case. Defendant Doe knew that he could commit excessive force without consequence. Rather than change policy, practice, or pattern of practice or custom stemming from the widespread use of excessive force during May and June 2020, the Philadelphia Police Department continued with the normal course of excessive force against the citizens of the City of Philadelphia.

40. Despite full knowledge of the history of excessive use of force by Philadelphia police, especially during protests, Police Commissioner Danielle Outlaw and policymakers for the City of Philadelphia failed to address the blatant use of excessive force during protests as recently as five months prior and did nothing to retrain, discipline or adequately supervise those officers and supervisors engaged in responding to the protests on October 27, 2020, the night that Plaintiff Thomas Blackwell was brutally struck by Defendant Police Officers.

## COUNT I - VIOLATION OF 42 U.S.C. § 1983 ALL DEFENDANTS

41. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

42. Defendants' actions were undertaken as part of the execution of a custom, policy, and/or practice that violated Plaintiff's civil rights.

43. Defendants' actions were taken under color of state law, are state actions under 42 U.S.C. §1983, and have deprived Plaintiff of her rights, privileges, and/or immunities secured by the Constitution and laws of the United States, including his right to bodily integrity and his right to be free from illegal seizure.

44. Defendants also violated Plaintiff's constitutional rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution by illegally seizing his person and using excessive force against him.

45. On information and belief, the aforesaid actions of Defendants were taken intentionally, willfully, and/or with deliberate indifference to, or reckless disregard for, the rights secured to the Plaintiff. Defendants' actions as stated herein denied Plaintiff's rights in violation of the United States Constitution and 42 U.S.C. § 1983.

46. Defendants also violated and conspired to deprive Plaintiff of his Due Process rights of Access to Courts by concealing their true identities and any identities of any unknown parties related to this action.

47. Defendants' actions were a factual cause of and/or directly and proximately caused Plaintiff's substantial damages and harm.

WHEREFORE, Plaintiff demands judgment for compensatory against all Defendants and punitive damages against all individual Defendants for such sums as would reasonably and properly compensate him for injuries in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars together with delay damages, interest, costs, attorneys' fees, punitive damages for the individual defendants, and declaratory and injunctive relief.

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 191029
215.546.0340

## COUNT II - EXCESSIVE FORCE - 42 U.S.C. § 1983

## INDIVIDUAL DEFENDANTS

48. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

49. Plaintiff believes and therefore avers that the force used upon him was unnecessary and more force than was reasonable and necessary under the circumstances.

50. Plaintiff believes and therefore avers that Defendants, acting in concert and conspiracy with each other, have by the aforementioned actions, deprived Plaintiff of his constitutional and statutory rights.

51. Defendants' actions were a factual cause of and/or caused Plaintiff's substantial damages and harm. (See above).

**WHEREFORE**, Plaintiff demands judgment against Defendants for such sums as would reasonably and properly compensate him for injuries in an amount in excess of Two Hundred Twenty Five Thousand ($150,000.00) Dollars together with delay damages, interest, costs and attorneys' fees and punitive damages.

## COUNT III: PLAINTIFF V. INDIVIDUAL DEFENDANTS

## FIRST AMENDMENT RIGHT TO FREE SPEECH

52. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

53. The Plaintiff claims damages for the violation of his right to free speech, association, and assembly under the First Amendment of the United States Constitution.

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 191029
215.546.0340

54. The Defendants, unlawfully and without legal justification, while acting under the color of law, deprived the above-named Plaintiff's rights to free speech, association, and assembly as protected by the First and Fourteenth Amendments to the United States Constitution, as well as 42 U.S.C. Section 1983.

55. The actions and conduct of the Defendants violated the rights of all of the Plaintiff to continue to engage in his First Amendment rights during the abovementioned peaceful nonviolent protests. These actions had a chilling effect on Plaintiff's individual right to free speech, association and assembly under the First Amendment.

56. As a direct and proximate cause of the named Defendants' actions and conduct, as well as the actions and conduct of Defendants, the Plaintiffs suffered a deprivation of his First Amendment rights to continue to engage in free speech, association and assembly. These actions created a chilling effect on Plaintiff's exercise of his First Amendment rights in the future.

57. As a direct and proximate cause of the Defendants' unlawful and unconstitutional actions and conduct, the Plaintiff suffered emotional distress, pain, and suffering. Plaintiffs suffered physical pain and suffered financial loss, which will be established at trial.

**WHEREFORE**, Plaintiffs demands judgment against Defendants for such sums as would reasonably and properly compensate him for injuries in an amount in excess of Two Hundred Twenty Five Thousand ($150,000.00) Dollars together with compensatory damages, delay damages, interest, costs and attorneys' fees.

## COUNT IV –
## MONELL CLAIM UNDER 42 U.S.C. § 1983
## DEFENDANT CITY OF PHILADELPHIA

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 191029
215.546.0340

58. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

59. Defendant City of Philadelphia, through its police department, established, knew of, and acquiesced to policies, procedures, and customs that Defendants knew or should have known would lead to violations of citizens' constitutional rights.

60. The decision makers of the City of Philadelphia, who made, enforced, or turned a blind eye, to the defective policies, procedures, and customs, including but not limited to the head of the police force, the mayor, and the individual defendants' direct supervisors on the night in question.

61. Defendant City of Philadelphia, through its police department, acted with deliberate indifference to the consequences when establishing and enforcing inadequate policies, procedures, and customs.

62. Defendant City of Philadelphia, through its police department, did not properly establish a policy regarding stops and seizures.

63. Defendant City of Philadelphia, through its police department, did not properly establish a policy regarding issuing summary citations.

64. Defendant City of Philadelphia, through its police department, did not properly establish a policy regarding if and when a police officer can use force.

65. Defendant City of Philadelphia, through its prisons department, did not properly establish a policy regarding citizens First Amendment Rights.

66. Defendant City of Philadelphia, through its police department, did not properly display the names and badge numbers of police officers during peaceful, non-violent protests to prevent

14

citizens from exercising their due process rights of access to courts.

67. Most outrageously, the deliberate indifference to the safety of citizens, or lack thereof, is so pervasive throughout the Philadelphia Police Department, in this case, a supervisor for the City of Philadelphia took part in beating Plaintiff.

68. Defendant City of Philadelphia, through it police department, did not properly train its poice force to properly activate, employ, and save video footage from the prison.

69. The Plaintiff believes and therefore avers the Defendant City of Philadelphia, has adopted and maintained for many years, a recognized and accepted policy, custom and/or practice of systematically failing to properly train, investigate, supervise and discipline its employees, including the individual Defendants, regarding individuals' rights under the Fourth Amendment, Eighth Amendment and Fourteenth Amendment of the Constitution of the United States.

70. Defendant City of Philadelphia, knew or should have known that its employees engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like Plaintiff, and that they deliberately, knowingly and intentionally failed to take measures to stop or limit the policy, custom and practice and therefore acquiesced in, and were deliberately indifferent to, the aforementioned unconstitutional conduct and policy.

71. By failing to take action to stop or limit the policy and/or custom and/or practice by remaining deliberately indifferent to the systematic abuse which occurred in accordance with and as a direct and proximate result of the policy, Defendant City of Philadelphia condoned, acquiesced in, participated in, and perpetrated the policy in violation of the Plaintiff's rights

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 191029
215.546.0340

under the First, Fourth, and Fourteenth Amendments to the Constitution of the United States, the laws of the United States and of the Commonwealth of Pennsylvania.

72. The conduct of Defendant City of Philadelphia and/or the conduct of defendants' employees or agents, and/or policy maker for the Defendant City of Philadelphia, were a factual cause of and/or the cause of the harm and damages sustained by Plaintiff.

WHEREFORE, Plaintiff demands judgment for compensatory damages against Defendants for such sums as would reasonably and properly compensate him for injuries in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars together with delay damages, interest, costs, attorneys' fees, and declaratory and injunctive relief.

Count IV

## **COUNT V - VIOLATION OF 42 U.S.C. § 1983**
## **CONSPIRACY TO DEPRIVE PLAINTIFF OF HIS DUE PROCESS RIGHT OF ACCESS TO COURTS - ALL DEFENDANTS**

73. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of thisComplaint and incorporates them herein by reference as if the same were set forth at length.

74. Defendants' actions were undertaken as part of the execution of a custom, policy, and/or practice that violated Plaintiff's civil rights.

75. Defendants' actions were taken under color of state law, are state actions under 42 U.S.C. §1983, and have deprived Plaintiff of her rights, privileges, and/or immunities secured by the Constitution and laws of the United States, including his right to bodily integrity and his right to be free from illegal seizure.

76. On information and belief, the aforesaid actions of Defendants were taken

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 191029
215.546.0340

intentionally, willfully, and/or with deliberate indifference to, or reckless disregard for, the rightssecured to the Plaintiff. Defendants' actions as stated herein denied Plaintiff's rights in violation of the United States Constitution and 42 U.S.C. § 1983.

77. Defendants also violated and conspired to deprive Plaintiff of his Due Process rights ofAccess to Courts by concealing and/or destroying a video of the incident, and concealing their true identities and the true identities of any unknown parties related to this action.

78. Defendants' actions were a factual cause of and/or directly and proximately causedPlaintiff's substantial damages and harm.

WHEREFORE, Plaintiff demands judgment for compensatory against all Defendants and punitive damages against all individual Defendants for such sums as would reasonably and properly compensate him for injuries in an amount in excess of Three Hundred Fifty Thousand($350,000.00) Dollars together with delay damages, interest, costs, attorneys' fees, punitive damages for the individual defendants, and declaratory and injunctive relief.

**COUNT VI – PENNSYLVANIA LAW - COMMON LAW ASSAULT AND BATTERY**

79. All previous paragraphs of this Complaint are incorporated herein by reference.

80. As a result of the actions and conduct of Defendant Doe, without just cause or lawful reason, committed assault and battery on the person of Plaintiff by striking Plaintiff in the face resulting in serious bodily injury to Plaintiff, which may be permanent. Additionally, Plaintiff suffered and continues to suffer psychological injury, emotional distress, humiliation and embarrassment as a result of the actions of Defendant Defendant Doe.

81. As the direct and proximate cause of Defendant Police Officers' unlawful actions,

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 191029
215.546.0340

Plaintiff suffered physical harm, psychological injury, emotional pain and suffering.

WHEREFORE, the Plaintiff requests the following relief:

(a) Compensatory damages to the Plaintiff against the Defendants jointly and severally;

(b) Punitive damages to the Plaintiff against the Defendants jointly and severally;

(c) Reasonable attorney's fees and costs to the Plaintiff on Counts of the Complaint;

(d) Such other and further relief appears reasonable and just.

Respectfully submitted,

/s Brian J. Zeiger
BRIAN J. ZEIGER, ESQUIRE
Identification No.: 87063
zeiger@levinzeiger.com
LEVIN & ZEIGER, LLP
1500 JFK Blvd, Suite 620
Philadelphia, Pennsylvania 19102
215.546.0340